UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.: 1:22CR64 |
| | ) | |
| Plaintiff, | ) | JUDGE JOHN ADAMS |
| | ) | |
| | ) | |
| | ) | |
| CLAUDE COLEMAN, | ) | |
| | ) | **ORDER** |
| | ) | |
| Defendant. | ) | |
| | ) | |

Pending before the Court is a determination of whether the expert opinions that Defendant Claude Coleman seeks to elicit from Lawrence Heller are proper. The Court conducted a hearing on the matter on May 9, 2023, and hereby orders as follows.

Federal Rule of Evidence 702 provides as follows:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Further, *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), "established the standard for admissibility of scientific expert testimony under Federal Rule of Evidence 702." *Champion v. Outlook Nashville, Inc.,* 380 F.3d 893, 907 (6th Cir. 2004). Because *Daubert* requires that "'any and all scientific testimony or evidence admitted [be] not only relevant, but reliable,'" *id.* (quoting *Daubert*, 509 U.S. at 589), this Court must determine "whether the reasoning or methodology underlying the testimony is scientifically valid and [ ] whether that

reasoning or methodology properly can be applied to the facts in issue." *Id.* (quoting *Daubert*, 509 U.S. at 592-93). The evidence need not be "unassailable" to be admissible. *U.S. v. Turner*, 287 Fed. Appx. 426, 433 (6th Cir. 2008) (quoting *United States v. Mahone*, 453 F.3d 68, 72 (1st Cir. 2006)). Rather, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596 (citation omitted).

Moreover, *Daubert* provides a "non-exclusive checklist of factors" for this Court to use to "assess[] the reliability of scientific expert testimony." *United States v. Beverly*, 369 F.3d 516, 528 (6th Cir. 2004). Those factors include:

> 1) whether the expert's scientific technique or theory can be, or has been, tested; 2) whether the technique or theory has been subject to peer review and publication; 3) the known or potential rate of error of the technique or theory when applied; 4) the existence and maintenance of standards and controls; and 5) whether the technique or theory has been generally accepted in the scientific community.

*Id.* (citing *Daubert*, 509 U.S. at 592-95; *Hardyman v. Norfolk & W. Ry.*, 243 F.3d 255, 260 (6th Cir. 2001)).

> Coleman's notice indicated that Heller would opine as follows:
>
> Larry Heller will opine that 12.77 grams of methamphetamine and 15.44 grams of cocaine base (crack) can be consistent with personal use. This opinion derives from his formal education and training, as well as anecdotal evidence from his work with clients – current or former drug addicts. He will opine that many drug users carry individual scales and are not engaged in drug trafficking; that drug users possess a scale to ensure they are not cheated when purchasing drugs. He will opine the presence drug pipes is indicative of personal use and not trafficking.
>
> He will also detail that drug users have incentives to purchase large amounts of drugs, such as price breaks and reducing the risks of being arrested. Further some drug addicts purchase larger amounts because they have transportation issues or lack of access to their drug dealer.

Doc. 82 at 3. Coleman noted that his need for expert testimony arose upon learning that the Government would utilize Task Force Officer Donald Kopchak to opine that the quantity of drugs

found in his possession was consistent with distribution and not personal use.

Initially, the Court notes that "[a]n expert's qualifications need not arise from scientific knowledge or formal education. *See, e.g., United States v. Holmes*, 751 F.3d 846, 849–50 (8th Cir. 2014) (observing that "formal education" about a subject matter "is not required under Rule 702"). "In drug cases, courts frequently admit expert testimony relating to the modus operandi of drug dealers, where the expert witness is a law-enforcement officer whose only qualification is experience in the field." *Id*. at 850. Moreover, courts have admitted expert opinions addressing the issue of personal use as opposed to distribution. *See, e.g., United States v. Lopez*, 880 F.3d 974, 980 (8th Cir. 2018) (affirming expert opinion testimony by a law enforcement officer about the daily quantity of methamphetamine an addict can consume to address dispute over whether drugs in defendant's possession were for personal use rather than distribution). In fact, the Sixth Circuit noted that it "routinely allows qualified law enforcement officials to testify that circumstances are consistent with drug distribution rather than personal use." *United States v. Ham*, 628 F.3d 801, 805 (6th Cir. 2011).

Based on Heller's responses during the evidentiary hearing held on May 9, 2023, the Court finds that he has provided an inadequate basis for offering the opinions proffered in Coleman's notice of intent.[1] While Heller's work experience and education would appear at first blush to provide an underlying basis to allow him to offer opinions, the record created before this Court is lacking in anything beyond Heller's work experience and education that would allow for him to offer opinions.

---

1 The Court will discuss Heller's opinion regarding finances as well despite the fact that this opinion was not included in Coleman's notice of expert testimony.

Heller first sought to opine that the amount of drugs recovered when Coleman was arrested was consistent with personal use. However, when examined, Heller was never asked and never offered any detailed information that helped to shape his underlying opinion. In other words, Heller never indicated the number of assessments he had conducted as a drug counselor, the nature of those assessments, or the methodology used to test the validity of the information of any information received through those assessments. Moreover, while Heller has indicated that he now engages in outreach in the drug community, there was scarce evidence, if any, presented as to how this outreach provided valid information that would allow Heller to offer his opinion on personal use.

The Court takes no view at this time on whether Heller could ever be qualified as an expert on the topics brought forward by Coleman. However, the record produced before this Court is substantially insufficient to demonstrate that he is qualified to offer the broad opinions contained in Coleman's notice. While Heller's own prior addiction and his counseling could conceivably provide some insight into the opinions sought to be offered, Coleman did not build a proper foundation that demonstrated Heller's qualifications. For example, while Heller contended that he interacted with addicts on a near daily basis, he failed to offer any information about the structure of those interactions. As such, it would be impossible to ascertain the validity of any information obtained from those interactions. Similarly, while Heller may have done assessments in his role as a counselor, nothing was placed in the record to explain whether those assessments are done in consistent manner that would elicit information that would aid Heller in offering the opinions at issue. Without such a record, Coleman failed to demonstrate that Heller's was qualified to offer the opinions at issue.

Furthermore, while Heller offered broad generalizations about drug use and drug addicts,

he offered nothing of substance regarding the particular opinion at issue. Specifically, Coleman was arrested in possession of 15.44 grams of crack cocaine and 12.77 grams of methamphetamine. Heller offered no testimony that indicated what specific experience he was relying on to determine those amounts were consistent with personal use. While Heller noted that he has met and counseled individuals utilizing these drugs, he offered no testimony to suggest that this experience allowed him to know the standard use amount of these drugs. For example, Heller never indicated that users of methamphetamine typically utilize a particular dose or quantity of the drug per use. Heller also never indicated how frequently an addict may use methamphetamine on a particular day or in a particular time frame. In other words, by appearance, it appears that Heller would offer his opinion based upon the fact that some drug user and some point in time has indicated usage of the amounts at issue. Ultimately, Heller it appears would testify that is *conceivable* that the amounts at issue could be for personal use.

Heller, however, could offer no opinion about the applicability of his conclusion *to Coleman*. As noted above, FRE 702 requires an expert to apply "the principles and methods reliably *to the facts of the case*." During the hearing, Heller effectively admitted that he knows *nothing* about Coleman.

> Q. Okay. Have you ever met with this defendant?
>
> A. To the best of my knowledge, no.
>
> Q. You certainly didn't meet with him in preparation for your opinion in this case?
>
> A. No.
>
> Q. Okay. Did you ever speak with him on the phone in your preparation for this case?
>
> A. No.
>
> Q. Do you know anything about his past?

>A. No.
>
>Q. Do you know whether he has a substance abuse issue in the past?
>
>A. No. And I did not testify that he does. I just said it's certainly possible.
>
>…
>
>Q. And I'll ask you a little more about that in a moment. But have you reviewed any of his medical records?
>
>A. No.
>
>Q. Okay. Have you reviewed any records relating to whether he has had prior drug counseling or treatment?
>
>A. No.

Doc. 120 at 55-56. In fact, Heller conceded that he was not offering any opinion about Coleman specifically: "I'm not here to make a formal diagnosis. I'm just here to address possibilities, what's within the realm of possibility and what could be." Doc. 120 at 57.

In other words, Heller would inform the jury that the amounts in questions could be consistent with personal use, but the jury would be provided no further expert testimony about *how* they were to evaluate that possibility with respect to Coleman.[2] In the absence of such additional information, Heller's opinions could not be said to assist the jury, but instead would only serve to confuse them.

For example, while Heller noted that an increased tolerance could lead to a user possessing larger quantities of drugs, he could not possibly offer an opinion as to the applicability of that opinion to Coleman. In other words, if Heller were asked the question of whether those amounts

---

2 The Court would note that appears to be an exceedingly large limit to the quantity of drugs that Heller would still label consistent with personal use. In *United States v. Durda*, Case No. 1:21CR624, Heller opined that 83 grams of 100% pure methamphetamine could be consistent with personal use. Heller offered this opinion despite an admission by the Defendant in that matter to officers that he was distributing the methamphetamine.

could be consistent with personal use *for Coleman*, he could respond in no other way than, "I don't know." In fact, time and time again during the evidentiary hearing, Heller responded that he was unaware of the specific facts at issue *in this case*. As a result, there is no underlying factual basis upon which Heller could offer an opinion that would assist the jury.

Additionally problematic for Heller is that *any* underlying basis for his opinion is admittedly based largely on the word of drug addicts. Heller candidly conceded that drug users are often dishonest, and he offered no additional information that would suggest any methodology that was used to validate any of the information he received. Thus, his opinion effectively cannot be tested in any fashion during cross-examination. There are no records that could be reviewed, nor any other individuals that could be contacted to validate any of the information. In other words, Heller would be asking a jury to simply trust his word about his underlying experiences that justify his opinions. The Court does not find such an approach to consistent with the rules of evidence.

The Court has little doubt that Heller has had daily interactions with drug users for multiple years. However, with no evidence provided to place those interactions into context, they cannot form the basis to allow an expert opinion. In essence, Heller seeks to offer anecdotal evidence related to these interactions that he cannot in any manner apply to the facts at issue in this matter.

The fault in this approach was highlighted when Heller sought to offer an additional opinion that was not originally included in the notice filed by Coleman. Heller sought to opine that consistent withdrawals and the depletion of funds from Coleman's bank account were consistent with someone using drugs. However, upon cross-examination, Heller admitted that he was unaware that the source of the money in the bank account was alleged fraudulent activity by Coleman. Further, Heller admitted that he was unaware that the type of account at issue did not

allow for any type of deposit. In other words, Heller again offered his opinion in a vacuum without any reliance on the actual facts of Coleman's case.

In closing, the Court would note that the work performed in the community by Heller is laudable. The Court has little doubt that Heller is making a difference in the lives of drug users and addicts on a regular basis. However, the record before this Court does not establish that he could offer an opinion with respect to Coleman that would assist a jury in resolving any of the issues present in this matter. The Court, therefore, excluded his testimony.

IT IS SO ORDERED.

    August 31, 2023                          */s/ John R. Adams*
                                                               JUDGE JOHN R. ADAMS
                                                               UNITED STATES DISTRICT JUDGE